# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM LARRY SULLIVAN, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO.: 5:09-cv-1015-JEO |
| v. ) | |
| ) | |
| THE PAUL REVERE LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the court on Defendant The Paul Revere Life Insurance Company's Motion for Summary Judgment (Doc. 36),[1] filed November 24, 2010. The motion has been fully briefed and is properly under submission. (Docs. 36-38, 40-41, and 44).

Plaintiff William Larry Sullivan, M.D., alleges that Defendant wrongfully denied his claim for insurance under a policy that is governed by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1001 *et. seq*. At issue here is whether Plaintiff is totally disabled as defined by the policy. Specifically, whether Plaintiff is able to perform the important duties of the occupation(s) in which he was regularly engaged at the time he became disabled.

I.   **FACTUAL AND PROCEDURAL HISTORY**

   A.   **Introduction and Policy Language**

The material facts in this case are largely undisputed. The central issues revolve around Plaintiff's occupation at the time he became disabled. Because there is no dispute that Plaintiff is physically unable to continue working as a physician in the emergency department, the court will

---

[1] References to "Doc(s). __" are to the documents as numbered by the clerk of court in the court's record of the case.

not detail the facts related to Plaintiff's medical history unless they are relevant to the issues raised by the parties. With that in mind, the court will set out the pertinent facts and procedural history.

In December 1993, Plaintiff applied for and received total disability insurance coverage from Defendant.[2] (Doc. 38-1 at 3-25). Significantly, the policy does not provide any coverage for partial disability. (*Id.*). The policy defines "Total Disability" as:

[B]ecause of Injury or Sickness:

a. You [Plaintiff] are unable to perform the important duties of Your Occupation; and

b. You are receiving Physician's Care. We [Defendant] will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.[3]

(*Id.* at 10). The policy defines "Your Occupation" as "the occupation or occupations in which You are regularly engaged at the time You become Disabled." (*Id.*).

## B. Plaintiff's Disability Claim

On December 10, 2007, Plaintiff submitted a claim under the policy, indicating that he become totally disabled due to severe lumbar spinal stenosis starting on November 17, 2007.[4] (Doc. 38-1 at 26). Plaintiff's claim forms state that he was no longer able to perform the duties of an emergency physician, and it is undisputed that Plaintiff worked his last shift in that position

---

[2] In his application, Plaintiff listed his occupation as "Chairman of Board/Med. Doctor." (Doc. 38-1 at 19). He listed his exact duties as "Emergency & Occupational Health Doctor + Chairman of PCS (Medical Billing)." (*Id.*).

[3] There is no dispute that Plaintiff has fulfilled that part of the definition that requires him to receive a physician's care. (*See* Doc. 37).

[4] It was later determined that Plaintiff's date of disability was December 26, 2007. (Doc. 38-3 at 80). Plaintiff does not contest this determination. (Plaintiff "was clearly disabled beginning December 26, 2007." (Doc. 40 at 20)(internal quotation marks omitted)).

on December 25, 2007. (Doc. 38-1 at 32). In his physician questionnaire, Plaintiff indicated that prior to his claimed date of disability, he had been working part-time in the emergency department ("ED") and part-time in hospital administration. (Doc. 38-1 at 38). He indicated that he spent 40% of his time seeing patients and 60% of his time perform administrative tasks. (*Id.*)

Even though Plaintiff did not submit a claim for coverage until late 2007, he had been experiencing problems with his back for several years. According to Plaintiff's treating physician, Dr. Charles T. Prickett, Plaintiff's symptoms had been manageable prior to June 2005 and had not interfered with his full-time duties as an emergency physician until that point. (Doc. 38-3 at 55). After June 2005, however, Plaintiff's condition worsened and continuing to work solely as an emergency room physician became impossible. (*Id*. at 24). At this time the hospital created an administrative position for Plaintiff as Vice President of Medical Affairs. (*Id.* at 82). Plaintiff continued to practice medicine as an emergency physician, albeit on a more limited basis, after he assumed the administrative position until December 2007. (*Id.*). At the end of 2007, when Plaintiff was no longer able to execute his emergency-room duties because of his declining condition, he assumed the administrator position full-time and filed his claim with Defendant. (*Id.* ). On July 31, 2008, Defendant denied the claim. (*Id.* at 80). Plaintiff's subsequent appeal was denied by Defendant in a letter dated February 23, 2009. (*Id.*).

It in uncontested that Plaintiff is no longer able to carry out his functions as an emergency room physician. A report conducted by Dr. Charles Sternbergh, a neurosurgeon employed by Defendant, concluded that Plaintiff's clinical data showed a loss of functional ability as an emergency physician. (*Id.* at 71-74). In his opinion, Plaintiff's restrictions and limitations are valid from December 26, 2007, and will remain permanent. (*Id.* at 74) Defendant's letter, dated

3

February 23, 2009, that denies Plaintiff's appeal acknowledged the permanence of Plaintiff's condition and its effect on Plaintiff's duties as an emergency physician. (*Id.* at 81).

Defendant's decision to deny benefits was not based on any belief that Plaintiff would continue to be able to perform the role of an emergency physician. (*See Id.* at 80-84). Instead, Defendant contests that Plaintiff does not meet the policy definition of "Total Disability" because he is still able to perform the important duties of his occupation. (*Id.* at 84). As the February 23, 2009, letter addressing Plaintiff's appeal explains, before Plaintiff's disability was filed in 2007, the Plaintiff's duties were "seeing patients (40%) and administrative duties (60%)." (*Id.* at 81). Based on this information, Defendant concluded that the "important duties" of Plaintiff's occupation included both "administrative office work and Emergency Room procedures." (*Id.* at 82). The letter goes on to explain that because Defendant had found that Plaintiff would be able to "continue to perform most of the important duties" of his occupation, and because his policy provided benefits only when the insured was unable to carry out such duties, that the claim was appropriately denied. (*Id.* at 84).

C.  **Procedural History**

After receiving notice that his claim had been denied on appeal, Plaintiff sued in the Morgan County Circuit Court on April 21, 2009. (Doc. 1 at 10-44). Plaintiff's suit initially asserted claims of breach of contract, bad faith, and unjust enrichment. (*Id.* at 10-12). Defendant timely removed the case to this court on May 22, 2009. (*Id.* at 1). On January 15, 2010, Defendant moved for summary judgment, seeking a ruling that the insurance policy in question was governed by ERISA. (Doc. 15). The court recommended that the motion be granted (doc.

26) and United States District Court Judge Inge P. Johnson adopted that recommendation on July 14, 2010. (Doc. 27).

In his amended complaint, filed July 16, 2010, Plaintiff seeks to enforce his rights for past, present, and future disability benefits pursuant to 29 U.S.C. § 1132 (a)(1)(B). (Doc. 28). Defendant filed the current motion for summary on November 24, 2010. (Doc. 36).

## II.  STANDARD OF REVIEW

Because the court's role in ERISA cases is more akin to an appellate one, the scope of its review on summary judgment is notably different than when it sits as a trial court. *See Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) (finding that the court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision). The first question the court must answer in addressing the motion for summary judgment is what standard of review applies. In *Williams v. BellSouth Telecommunications., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008), the Eleventh Circuit set forth a six-step model for use in judicially reviewing ERISA denials:

> (1)  Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2)  If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3)  If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds

>    supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4)   If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5)   If there is no conflict, then end the inquiry and affirm the decision.
>
> (6)   If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams*, 373 F.3d at 1138 (footnotes and internal citations omitted).

The final step of this model was called into question by the Supreme Court in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). In *Glenn*, the Supreme Court found that a heightened arbitrary and capricious standard of review is the wrong standard to use when a conflict exists. *Id.* at 117. Rather, the Supreme Court held that "a reviewing court should consider [the] conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* In *Doyle*, the Eleventh Circuit recognized that *Glenn* overruled the application of the heightened standard to a conflicted administrator's benefits decision. 542 F.3d at 1360. The *Doyle* court held that "while the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* Even though the standard of review for the final step enumerated in *Williams* has changed, the "methodology remains intact." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010). Accordingly, this court will begin with a *de novo* review of Hartford's decision. If the

court finds that Hartford's decision was wrong, then this court will review whether the decision was reasonable, taking any possible conflict into account as a factor.

## III.   ANALYSIS

### A.   *De Novo* Review

The court's initial task is to review, on a *de novo* basis, whether the decision to deny Plaintiff's claim for total disability was wrong. In determining whether the decision was wrong, "the court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator." *Glazer v. Reliance Std. Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). A decision is wrong if "the court disagrees with the administrator's decision." *Id.* If the court determines that the administrator's decision is right, then summary judgment is due to be granted in favor of Defendant. *Id.*

In the instant case, Plaintiff must demonstrate that he was totally disabled as defined by the policy in order to obtain benefits from Defendant. In other words, Plaintiff has to show that he was unable to perform the important duties of the occupation or occupations that he was regularly engaged in at the time he became disabled. (*See* Doc. 38 at 13).

In its February 23, 2009 denial letter, Defendant stated: "We have determined your occupation to be that of Vice President Medical Affairs. We are unable to consider your inability to perform the occupational duties of an Emergency Room physician because at the time you became disabled you had ceased working as a physician." (Doc. 38-3 at 84). Defendant based this on the fact that Plaintiff had worked in his "administrative position since June 1, 2005, at the rate of 32 hours per week, with an increase to 40 hours per week October 2007." (*Id.*).

Defendant also explained that it had determined that Plaintiff "continued to perform most of the important duties of [his] Occupation." (Doc. 38-3 at 82).

Plaintiff disagrees with Defendant's contention that Plaintiff's occupation was not that of an emergency physician when he became disabled. (Doc. 40 at 18). Plaintiff points out that neither party disputes that he continued to perform the "important duties of emergency physician from June 2005 through December 25, 2007." (*Id.*). He further argues that he did not perform an occupation with mixed duties or perform two occupations. (*Id.*). Instead, Plaintiff asserts that he performed only one occupation, emergency room physician, and it was "only his scheduled shifts in [the emergency room physician] occupation that had changed" after he assumed his administrative position. (*Id.*). According to the Plaintiff, it is "immaterial that he was spending 40% of his time treating patients and 60% of his time performing administrative tasks." (*Id.* at 19).

Plaintiff argues that Defendant's decision to deny him benefits was wrong because he "was clearly disabled beginning December 26, 2007." (Doc. 40 at 20) (internal quotation marks omitted). Plaintiff's arguments center around the fact that because he is no longer able to perform the duties of an physician in the emergency department he meets the definition of disabled.[5] At the heart of Plaintiff's argument is the definition, or lack thereof, of "occupation." As stated above, the policy defines "Your Occupation" as "the occupation in which You are regularly engaged *at the time You become Disabled*." (Doc. 38-3 at 10) (emphasis added).[6]

---

[5] Defendant does not dispute the fact that Plaintiff is no longer able to work as a physician in an emergency department. (Doc. 38-3 at 81) ("Based on the finding of the medical review we determined there was medical support for your restrictions and limitations beginning December 26, 2007.").

[6] It is clear from this definition that the operative time to analyze Plaintiff's occupation is at the time he became disabled, which in this case is December 26, 2007. Nonetheless, Plaintiff notes that on his insurance application he listed his occupation as emergency doctor and that he slowly transitioned into taking on more administrative duties

8

Plaintiff seems to make the argument that "occupation," as used in the definition of "Your Occupation," has a greater meaning than what this particular Plaintiff was doing for his particular employer. In other words, Plaintiff seems to argue that his occupation is emergency room physician, but his job for his particular employer happened to include both administrative and medical duties. This argument seems to be based on the contention that Plaintiff's administrative work was an "accommodation" and that Defendant's claim's manual distinguishes between the terms job and occupation.[7]

However, Plaintiff fails to support his contention that his occupation is solely that of a physician in the emergency department. He offers no rationale for why it was wrong for Defendant to determine that his occupation was that of Vice President of Medical Affairs.[8] (*See* Doc. 40). Instead, he makes conclusory statements that his occupation was that of emergency room physician and states that the administrative duties he assumed in the years prior to becoming disabled were an "accommodation" offered by the hospital so he could maintain his

---

and spending less time in the emergency department. (*See* Doc. 40 at 22-23). However, how Plaintiff filled out the occupation section of his application or what percentage of his time was spent doing administrative duties in the years prior to him becoming disabled is irrelevant to the question before the court because based on the definition of "Your Occupation" the relevant inquiry is what Plaintiff's occupation was at the time of disability.

[7] The claim's manual discusses the terms occupation and job as follows:
> The term "occupation" is often interpreted to be the same as "job." This interpretation is incorrect as a job differs from an occupation.
> • A job is a set of specific duties performed for a particular employer.
> • An occupation is a broader description of the type of work as it is generally performed in the national economy.

(Doc. 40 at 25) (quoting Doc. 41 at 16).

[8] The court notes that hospital administrator is an occupation as defined by the claim's manual. However, the court doubts the relevance of the manual given that the pertinent question before the court is whether, based on the administrative record before the administrator at the time it made its decision, the court agrees with that decision. *See Glazer*, 524 F.3d at 1246.

occupation as a physician in the emergency department.[9] (Doc. 40 at 9, 18, 20-26). This does not mesh with the unambiguous nature of the policy language. *See Hand v. Unum Provident Corp.*, 202 Fed. App'x 689, 693 (5th Cir. 2006) (finding the policy language identical to the language here to clearly and unambiguously mean the "occupation in which [Plaintiff] was regularly engaged at the time he became disabled"). At the time he became disabled, it is undisputed that Plaintiff was working 32 hours per week as Vice President of Medical Affairs and spending the majority of his time doing administrative tasks. Thus, Defendant was correct in determining that Plaintiff's occupation was that of Vice President of Medical Affairs.[10]

---

[9] Plaintiff asks the court to consider five cases as support for the contention that Defendant routinely uses accommodations made by employers as an attempt to claim that an insured has two occupations. (Doc. 40 at 18). However, these cases fail to support that assertion or any other argument made by Plaintiff. *See Kerwin v. Paul Revere Life Ins*. Co., 6 Fed. App'x 233 (6th Cir. 2001) (finding that on a motion for summary judgment there were issues of fact related to a state law breach of contract claim as to whether the plaintiff was able to perform the important duties of his occupation as a trial attorney. It was undisputed that if he were unable to perform those duties, the plaintiff would be entitled to benefits under the policy.); *Natarajan v. Paul Revere Ins. Co*., 2010 WL 2509886 (M.D. Fla. 2010) (finding on summary judgment there were issues of fact in a state law breach of contract claim as to whether the plaintiff was a specialist at the time he became disabled); *Karlin v. Paul Revere Life Ins. Co.*, 2010 WL 3825493 (D. Kan. 2010) (denying summary judgment on a state law breach of contract claim because the record was not fully developed. However, it is worth noting that the court agreed with the court in *Hershman v. UnumProvident Corp.*, 660 F. Supp. 2d 527, 533 (S.D.N.Y. 2009) and found that if an insured routinely performs a specialty, but also devotes substantial time to a non-specialty practice, the insured is not totally disabled by an inability to perform the specialty.); *Pekin v. Paul Revere Life Ins. Co.,* 2010 WL 2731067 (N.D. Ill. 2010) (finding on summary judgment that there were issues of fact concerning what the plaintiff's occupation was at the time of disability in a state law breach of contract claim); *Ray v. Unum Life Ins. Co. of America*, 224 Fed. App'x 772 (10th Cir. 2007) (affirming a District Court's findings of fact as to whether the plaintiff was disabled after a bench trial in an ERISA case. The Tenth Circuit noted the deference it afforded the District Court in its unpublished opinion).

[10] Plaintiff's contention that his role as Vice President of Medical Affairs was an "accommodation" and not a separate occupation is not compelling. *See Natarajan v. Paul Revere Ins. Co*., 2010 WL 2509886 (M.D. Fla. 2010) (finding there was a factual dispute as to whether Plaintiff was a specialist at the time of disability when he had reduced the amount of time spent on the specialized practice and spent more time in a generalized practice due to his disability. The court considered the specialty and general practices as separate occupations). In the first place, Plaintiff fails to cite to any authority to support this theory. Additionally, when the claim's manual (*see supra* n.8) supplied by Plaintiff discusses an accommodation it asks the claims handler to consider possible "accommodations that will enable the insured to perform specific tasks by alterative means" when conducting an independent verification of occupational duties. (Doc. 41 at 18). This understanding comports with the everyday understanding the court has of "accommodation." In other words, it is generally understood that an accommodation is something that an employer will do to allow an employee to continue to perform the job he already has. It is not providing an employee with a new "position" in order to work fewer hours in their present job.

However, even if Defendant were wrong in concluding that Plaintiff's occupation was that of Vice President of Medical Affairs, it is clear to the court that at least Plaintiff was maintaining two occupations, one as Vice President of Medical Affairs and the other as an emergency room physician. However, this distinction is of little relevance. The policy in question provides that Your Occupation is the "*occupation or occupations* in which You are regularly engaged at the time disability begins." (Doc. 38 at 13).

In short, the court finds that Defendant was not wrong in determining that Plaintiff's occupation was that of Vice President of Medical Affairs, or that alternatively Plaintiff had two occupations, that of Vice President of Medical Affairs and Emergency Room Physician. Thus, the relevant inquiry becomes whether Plaintiff's disability made him unable to perform the important duties of his occupation(s). In *Giddens v. Equitable Life Assurance Society of U.S.*, 445 F.3d 1286 (11th Cir. 2006), the Eleventh Circuit addressed whether, under a similar policy, an insured must show that he is unable to perform *all* of the important duties of his occupation or whether he has to show that he is unable to perform *most* of the important duties of his occupation. The court held:

> We do not suggest that "all" is an unreasonable interpretation of the policy language, but we do say that "most" or the "majority" of the substantial duties is also a reasonable interpretation if an insured is unable to engage in his regular occupation as a result of his inability to perform most or the majority of those duties.

*Id.* at 1298. Here, it is uncontested that Plaintiff is able to perform 60% of the occupational duties he was performing prior to his filing of disability, which certainly qualifies as a majority. Thus, Defendant correctly determined that Plaintiff was able to perform the important duties of his occupation.

Having reviewed the administrative record, the court finds that Defendant's decision was not wrong. Accordingly, summary judgment is due to be granted in its favor. Nevertheless, the court will also address whether Defendant's decision was reasonable.

### B. Arbitrary and Capricious Review

Even if the court assumes, *arguendo*, that Defendant's decision to deny Plaintiff's benefits was wrong, summary judgment is still due to be granted in favor of Defendant because its decision was reasonable. If a court finds that the administrator was *de novo* wrong when it denied a claimant's benefits, *Williams* and its progeny require the court to apply an arbitrary and capricious standard to review that decision when the administrator was vested with discretion to determine eligibility for benefits or construe the terms of the plan.

As a preliminary matter, it is clear that Defendant has discretionary authority to administer the plan based language from the policy that states benefits will only be paid "[a]fter We receive satisfactory proof of loss." *See Trippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233 (11th Cir. 2006) (finding that the insurer had discretion where the policy required the insured to "submit satisfactory proof of Total Disability to us"). Having found that Defendant was vested with discretion in reviewing claims, it is appropriate to determine whether the administrator's decision was arbitrary and capricious.[11]

Under arbitrary and capricious review, "the plan administrator's decision to deny benefits must be upheld so long as there is a 'reasonable basis' for the decision." *Oliver v. Coca-Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007), *reh'g granted and partially vacated on other grounds*, 506 F.3d 1316 (11th Cir. 2007), *quoting Jett v. Blue Cross & Blue Shield of Ala.*, 890

---

[11] Plaintiff does not appear to contest this fact. *See* Doc. 28 (including numerous references to actions of Defendant being arbitrary and capricious); Doc. 40 at 17.

F.2d 1137, 1140 (11th Cir. 1989). That is, "this Court's role is limited to determining whether [Defendant's] interpretation was made rationally and in good faith – not whether it was right." *Guy v. Southeastern Iron Workers Welfare Fund*, 877 F.2d 37, 38 (11th Cir. 1989). The determination of the plan administrator "need not be the best possible decision only one with a rational justification." *Griffis v. Delta Family-Care Disability Plan*, 723 F.2d 822, 825 (11th Cir. 1984).

If a reasonable basis exists for the decision made by Defendant, "it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1138; *see also Sharron v. Amalgamated Ins. Agency Servs., Inc.*, 704 F.2d 562, 564 (11th Cir. 1983) ("[A] court should enforce a decision of pension fund trustees even though the court may disagree with it, so long as the decision is not arbitrary and capricious."). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Retirement Plans*, 887 F.2d 689, 693 (6th Cir. 1989), *quoting Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985).

Under *Glenn* and *Doyle*, this court to is to consider any conflict of interest as a factor in the arbitrary and capricious analysis.[12] *Doyle*, 542 F.3d at 1360. In other words, a conflict of interest is one of several considerations that a court should take into account when considering the lawfulness of a denial of benefits. *Glenn*, 554 U.S. at 117. Further, "[w]hile the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show

---

[12] Because Defendant both provides benefits and administers claims under the Policy, it is presumed to operate under a conflict of interest. *Levinson v. Reliance Std. Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001).

that the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d at 1360.

Before delving in to the merits of whether Defendant's decision was reasonable, the court first notes that Plaintiff has not met his burden of showing that Defendant's decision was arbitrary. Plaintiff does not argue that Defendant's decision was unreasonable, much less offer authority to support such a contention (*See* Doc. 40). Admittedly, in Plaintiff's explanation of "the law," he states that the arbitrary and capricious standard applies when an administrator is vested with discretion and even points out that conflict of interest exists where a plan pays from its own assets. (*Id.* at 17-18). However, nowhere else in his briefing does Plaintiff address whether Defendant's decision was arbitrary and capricious. For this reason alone, it is clear that Plaintiff fails to met his burden of proving that Defendant's decision was arbitrary and capricious.

Nonetheless, the court will briefly address the merits of whether Defendant's denial was reasonable. As discussed above, Defendant's decision about whether to deny the claim depends on whether Plaintiff met the definition of Total Disability. That is, whether Plaintiff was "unable to perform the important duties" of the "occupation or occupations in which [he] was regularly engaged at the time [he] [became] disabled." (Doc. 38-1 at 10).

In Plaintiff's denial letter, the stated reason for denying the claim was that Plaintiff was still able to perform the important duties of his occupation as Vice President of Medical Affairs. (Doc. 38-3 at 84). Given that Plaintiff spent 60% of his time performing administrative duties, it is reasonable for the Defendant to find that is at least one of his occupations, if not his sole occupation. Because Defendant's determination of Plaintiff's occupation was reasonable, it

follows, for the reasons addressed when determining whether Defendant's decision was right, that Defendant's determination that Plaintiff couldn't perform the important duties of his occupation was also reasonable.

Because Defendant's determination that Plaintiff does not meet the definition of Total Disability contained in the policy, and thus, is not totally disabled is reasonable, its decision was not arbitrary and capricious. Additionally, Plaintiff has failed to point to any evidence indicating that the inherent conflict of interest (caused because Defendant was both the plan administrator and the party responsible for paying the claim) tainted Defendant's decision. Accordingly, Defendant's motion for summary judgment is due to be granted.

## IV.   CONCLUSION

After engaging in the analytical framework laid out by the Eleventh Circuit in *Williams* and modified by the Supreme Court in *Glenn*, it is clear that Defendant is entitled to summary judgment. After conducting a *de novo* review of the record, the court finds that Defendant's decision to deny Plaintiff's claim was not wrong, which according to *Williams* obviates the need for any further analysis. However, even assuming that Defendant's decision to deny Plaintiff's claim was wrong, Defendant is still entitled to summary judgment because that decision was not arbitrary and capricious. Accordingly, Defendant's Motion for Summary Judgment is due to be granted. The court will enter a separate order.

**DONE** this ___30th___ day of September, 2011.

_John E. Ott_
**JOHN E. OTT**
United States Magistrate Judge